UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED PARCEL SERVICE, INC., *et al.*                                          PLAINTIFFS

v.                                                                                           CIVIL ACTION NO. 3:12-CV-561

AIR TRANSPORT INTERNATIONAL LLC                                        DEFENDANT

### MEMORANDUM OPINION

This matter is before the court pursuant to a motion by plaintiffs United Parcel Service, Inc., United Parcel Service Co., United Parcel Service General Services Co., and UPS Worldwide Forwarding, Inc. ("UPS Worldwide") (collectively, "UPS" or the "UPS Plaintiffs") to dismiss defendant Air Transport International LLC's ("ATI") amended counterclaim (DN 21).

The basis for this action between UPS and ATI is an underlying action brought by plaintiffs Gary and Peggy DeVaco in the Pennsylvania Court of Common Pleas against each of the UPS Plaintiffs except UPS Worldwide (the "DeVaco Action"). In the DeVacos' complaint in that action, they allege that Gary DeVaco was employed as a mechanic by ATI, which had contracted to transport some of UPS's overflow of packaging and cargo. Supposedly, Mr. DeVaco and another ATI employee were waiting in an ATI truck for the arrival of an ATI aircraft when jet blast from a taxiing UPS Boeing 747 flipped the truck onto its side and pushed it several feet, injuring Mr. DeVaco. The DeVacos brought a litany of claims against the UPS Plaintiffs based on that alleged incident.

UPS filed this action in Jefferson County, Kentucky, Circuit Court seeking to require ATI to indemnify and defend UPS in the DeVaco Action pursuant to an indemnification provision of a

Cargo Aircraft Charter Agreement ("CACA") that was signed by UPS Worldwide and ATI. According to UPS's complaint in this action, ATI initially agreed to defend UPS in the DeVaco Action. However, after the expiration of the time for discovery in the DeVaco Action, ATI informed UPS that it was revoking its agreement to defend UPS in the action. The UPS Plaintiffs brought claims against ATI for a declaratory judgment and for breach of contract. ATI removed the case to this court pursuant to its diversity jurisdiction and filed an answer and counterclaim. After the UPS Plaintiffs moved to dismiss the counterclaim, ATI filed an amended counterclaim.

In the amended counterclaim, ATI states that it initially retained a law firm to defend the UPS Plaintiffs that were sued in the DeVaco action, although it never agreed to indemnify UPS. However, ATI alleges, during discovery in the DeVaco Action it learned several facts about the accident in which Mr. DeVaco was injured that convinced ATI that it had no duty to defend or indemnify the UPS Plaintiffs. In particular, ATI states that it learned that UPS employees directed Mr. DeVaco and his co-worker to park the ATI vehicle they were driving in a particular area, which, unbeknownst to Mr. DeVaco and his co-worker, was a jet blast hazard; that UPS had not installed blast fences to prevent jet blast, nor had they posted signs indicating the area was a jet blast area; that UPS employees did not survey the area where Mr. DeVaco was sitting in the ATI vehicle and did not clear the area of people or vehicles when the UPS Boeing 747 landed; that UPS employees saw the ATI vehicle violently shaking, but did not communicate that to the flight crew, nor did they stop the plane and demand that a tug be used to pull the plane into its parked position so that it would not generate jet blast; and that the captain of the Boeing 747, a UPS employee, was unaware of the dimensions of jet blast hazard area behind his plane, did not properly assess whether the jet blast hazard area behind his plane was clear while the plane was taxiing, and inappropriately

increased engine throttles during his final turn. ATI claims that UPS management was aware of the jet blast hazard conditions from a history of complaints about jet blast incidents, but made no changes to their operations, instead willfully ignoring the jet blast hazard risk and disregarding the safety of workers. After ATI became aware of those alleged facts, it notified UPS that it had no obligation to defend or indemnify UPS in the DeVaco Action, withdrew its defense, and requested that UPS indemnify ATI pursuant to the CACA for certain losses it had incurred.

ATI brings three causes of action against UPS based on the factual allegations in its amended counterclaim. In Count I, ATI seeks a declaratory judgment that it has no duty to defend and indemnify UPS and that UPS is obligated to indemnify ATI. In Count II, ATI brings a claim for breach of the CACA, based on UPS Worldwide's failure to indemnify ATI for "consequential damages" relating to the incident in which Mr. DeVaco was injured, including damages to ATI's property, the costs relating to the interruption of ATI's business, the expenses ATI paid relating to Mr. DeVaco's injuries, and the legal fees ATI had previously spent defending UPS in the DeVaco Action before ATI determined that it had no duty to defend UPS. And, in Count III, ATI claimed that if it was not entitled to recover the damages for breach of contract set forth under Count II, then it was entitled to recover for unjust enrichment the amounts it paid for UPS's defense in the DeVaco Action.

UPS now moves to dismiss ATI's amended counterclaim for failure to state a claim. Upon a motion to dismiss for failure to state a claim, a court "must construe the complaint in the light most favorable to plaintiffs" and "accept all well-pled factual allegations as true." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations respecting all material elements" of

the offense. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 902 (6th Cir. 2009) (internal question marks omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must provide more than "labels and conclusions," *Twombly*, 550 U.S. at 555, or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Accordingly, a court considering a motion to dismiss can begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. After doing so, the court should determine whether the remaining well-pled factual allegations, assumed to be true, "plausibly give rise to an entitlement to relief." *Id.*

UPS argues that it has no obligation under the CACA to indemnify ATI for anything resulting from the actions alleged in the complaint. "Kentucky law provides that '[t]he nature of an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself.'" *Thompson v. The Budd Co.*, 199 F.3d 799, 807 (6th Cir. 1999) (quoting *United States Fidelity & Guar. Co. v. Napier Elec. & Const. Co., Inc.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978)).

Section 1.4 of the CACA sets forth UPS's duty to indemnify ATI:

UPS hereby agrees to indemnify, defend, and release and hold harmless [ATI] and its officers, directors, agents and employees against any and all liabilities, claims, demands, suits, judgments, damages and losses, including the reasonable costs, expenses and legal fees in connection therewith or incident thereto, arising out of death or injury to any person whomsoever, including but not limited to employees of [ATI] or UPS, or arising out of loss of, damage to or destruction of any property whatsoever, including but not limited to cargo, the Aircraft and other property of [ATI] or third parties, to the extent caused by or arising out of or in any way

>   connected with the UPS performance of services hereunder or its possession, use or maintenance of Aircraft utilized to provide such services, excluding however injury or damage caused by the willful misconduct or gross negligence of [ATI] or its subcontractors.

UPS argues that ATI's claim for indemnification fails because none of the actions ATI alleges were undertaken by UPS employees constituted services under the CACA. In that regard, the UPS Plaintiffs contend that the meaning of "UPS performance of services hereunder" extends only to the performance of certain actions listed in Sections 2.0-2.3 of the CACA, which is entitled "OBLIGATIONS OF UPS." Section 2.1 sets out UPS's obligation to pay ATI for its services. Section 2.2 states that UPS was required to "arrange and pay for certain operational expenses incurred during the operation" contemplated under the CACA, including fuel, landing fees and navigational/overflight fees, "All Aircraft handling, including aircraft marshalling, airstart, ground power units, push back of aircraft, stairs, deicing and cleaning of aircraft lavatories," loading and unloading of cargo from Aircraft, and Aircraft parking fees. Finally, Section 2.3 required UPS to pay for certain damages to Aircraft.

In response, ATI argues that the UPS Plaintiffs are wrong that the term "services" in the indemnification clause relates only to the obligations of UPS set forth in Sections 2.0-2.3. ATI notes that the term "services" is not defined in the contract, and argues that "[b]y examining the entire contract, the parties intended the term 'services' to have a broader interpretation than just UPS's payment obligations under Section 2[] of the Agreement."

However, the court agrees with UPS that the use of the term "services" in the indemnity provision unambiguously refers only to the explicit obligations of UPS that are set forth in Sections 2.0-2.3. Specifically, the indemnity provision uses the phrase "services hereunder," clearly referring to the services UPS was required to perform under the CACA. And Sections 2.0-2.3 are the only

section of the CACA setting forth anything that could reasonably be called services that UPS was required to undertake. Indeed, while ATI contends that the language of the "entire contract" somehow requires a broader interpretation of the term "services," ATI points to no specific language in the contract to support that argument, nor does it indicate what exactly a "broader interpretation" would encompass. The court rejects ATI's attempt to impose a nebulous meaning upon the term "services" based upon unspecified language in the "entire contract."

Having determined that the use of the phrase "services hereunder" in the indemnity provision means those obligations of UPS detailed in Sections 2.0-2.3 of the CACA, the court turns to the question of whether any of the actions ATI alleges that UPS employees undertook constitute the "performance of services." Many of the listed obligations in Sections 2.0-2.3 relate to UPS's obligation to pay ATI, and are clearly inapplicable to the allegations in ATI's complaint. The only non-payment related obligations are set forth in Section 2.2, which required UPS to arrange certain operations. Within those obligations, ATI identifies subsection 2.2(c), which states that UPS was required to arrange "[a]ll Aircraft handling, including aircraft marshalling, airstart, ground power units, push back of aircraft, stairs, deicing and cleaning of aircraft lavatories," as providing a basis for determining that UPS was performing services when it allegedly took the actions identified in the complaint.

To unwind the meaning of subsection 2.2(c), it first must be noted that "Aircraft" is a defined term in the contract. Specifically, Section 1.1 states, "[ATI] hereby charters to UPS in accordance with the terms and conditions of this Agreement one (1) or more properly crewed, maintained, insured and equipped aircraft (the "Aircraft") for the carriage of UPS's freight as set forth in each signed attachment to this Agreement." Thus, the reference in subsection 2.2(c) to UPS's obligation

to arrange for "[a]ll Aircraft handling" clearly means handling of all *ATI* aircraft, not aircraft owned by UPS.

Nevertheless, ATI argues that subsection 2.2(c)'s use of the term "aircraft marshalling" did not refer solely to ATI aircraft, but also obligated UPS to arrange to marshal its own aircraft – and the incident in issue allegedly occurred while a UPS plane was being marshalled. To be sure, the word "aircraft" in the term "aircraft marshalling" in subsection 2.2(c) is not capitalized, while the defined term "Aircraft" is capitalized in the CACA. However, the phrase "aircraft marshalling" in subsection 2.2(c) is used as an example of the types of "Aircraft handling" that UPS was obligated to arrange. Accordingly, it clearly relates to the marshalling of ATI aircraft, not all aircraft on UPS's property. Simply put, it makes no sense to state that one type of ATI aircraft handling that UPS must arrange for is the marshalling of non-ATI aircraft.

ATI also argues that, as part of UPS's obligation to arrange for handling of ATI aircraft, it was "required to direct and control the location of the ATI Mechanics waiting to service ATI aircraft." However, it is a stretch to infer from UPS's contractual obligation to arrange for marshalling of ATI aircraft that UPS also had an implied contractual obligation to control ATI mechanics in any way.

ATI also notes that Section 2.2 uses the term "including" when describing the operational expenses that UPS is required to arrange and pay for pursuant to the CACA, thus indicating that the list of operational expenses in the CACA is not all-inclusive. ATI then declares, "The act of escorting and directing the ATI Mechanics where to park on UPS property was certainly an 'operational expense[] incurred during the operation contemplated' under the Agreement." But despite ATI's certainty on that point, the court finds it hard to see how escorting and directing ATI

mechanics is an "operational expense" that should be laid at the feet of UPS without some contractual language supporting that view. Notably, ATI aircraft maintenance is *not* one of the operational expenses UPS is obligated to arrange for and pay under the CACA. Thus, even if the list of operational expenses in Section 2.2 of the CACA is not all-inclusive, it is also clear that directing ATI mechanics around UPS's property was not one of the operational expenses for which UPS was required to arrange under the CACA.

ATI further contends that reading the CACA as the court does produces "absurd" results. First, ATI argues that it is absurd for "services" to mean only the "list of payment obligations of UPS" since the duty to indemnify owed by UPS is for damages arising out of death or injury. According to ATI, such a reading renders the indemnity provision to be mere surplusage. That argument, however, is based upon a false premise: that the list of obligations in Sections 2.0-2.3 is limited to payment services. It ignores that the CACA not only obligates UPS to pay for certain services, but also to arrange for certain operational expenses. It is hardly absurd to find that UPS's obligation to arrange for, e.g., ATI aircraft marshalling or the loading and unloading of cargo into and out of ATI aircraft could result in injury or death. Thus, the indemnity provision could hardly be called surplusage under the court's reading.

ATI also states that it would "be absurd to conclude that the term 'services' somehow excludes UPS's duty to escort and direct ATI vehicles and personnel on UPS controlled property, especially when the ATI personnel were waiting to service an ATI aircraft that was carrying UPS's freight pursuant to the Agreement." According to ATI, its personnel cannot perform their duties under the CACA without UPS telling them where to be. As UPS sees it, it was ATI's obligation to provide aircraft mechanics who knew their way around an airport ramp. No matter which party is

correct as to who was responsible for indicating to ATI mechanics where on the tarmac they needed to be, the contract is clear as to the fact that UPS only need indemnify ATI for damages resulting from "UPS' performance of services" under the CACA, and the CACA contains no language that would indicate that UPS had any obligation to direct ATI mechanics in any way. Simply put, there is nothing "absurd" about the parties' choice to limit indemnification only to damages connected to services UPS was required to provide under the CACA, as opposed to damages arising from any of the other countless acts undertaken by UPS employees at the UPS facility.

Finally, ATI also argues that it is premature for the court to even reach the indemnity issue. It asserts that it was not required to "set forth *each and every* factual allegation that proves ATI's claims for indemnity and breach of contract" (DN 23 at 10 (emphasis in original)), and that the court should await a complete factual record before determining whether ATI was entitled to indemnity. However, under *Twombly* and *Iqbal* ATI was required to set forth sufficient factual allegations that show that it has a right to relief. For the reasons stated above, ATI has not put forth sufficient factual allegations that, assuming them to be true, would show ATI is entitled to indemnification from UPS. Accordingly, the motion to dismiss for failure to state a claim is ripe for adjudication.

Since, even assuming the truth of the facts alleged by ATI, UPS has no duty under the CACA to indemnify ATI, the court will dismiss Count II and the portion of Count I that requests a declaration that UPS is obligated to indemnify ATI. However, UPS has not put forward any argument that ATI's request in Count I of the amended counterclaim for a declaration that it has no duty to defend and indemnify the UPS Plaintiffs fails to state a claim, nor has UPS made any argument regarding the unjust enrichment claim in Count III of the amended counterclaim.

Accordingly, the motion to dismiss will be denied as to Count III and the portion of Count I requesting a declaration that ATI has no duty to defend and indemnify the UPS Plaintiffs.

A separate order will be entered consistent with this opinion.

May 17, 2013

**Charles R. Simpson III, Senior Judge**
**United States District Court**