UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


UNITED PARCEL SERVICE, INC., et al.                                    PLAINTIFFS


v.                                                    NO. 3:12-CV-00561-CRS-DW


AIR TRANSPORT INTERNATIONAL LLC                                    DEFENDANT


**MEMORANDUM OPINION**

This matter is before the court on the motion of the plaintiffs, United Parcel Service, Inc., United Parcel Service Co., United Parcel Service General Services Co., and United Parcel Service Worldwide Forwarding, Inc. (collectively, "UPS" or the "UPS Plaintiffs") for judgment on the pleadings. (DN 47). The defendant, Air Transport International LLC ("ATI"), has filed a response (DN 52), to which the UPS Plaintiffs have replied (DN 56). Fully briefed, the matter is now ripe for adjudication. For the reasons set forth below, the court will deny the UPS Plaintiffs' motion for judgment on the pleadings (DN 47).

**I.**

This action between UPS and ATI derives from an underlying action brought by Gary and Peggy DeVaco in the Pennsylvania Court of Common Pleas against each of the UPS Plaintiffs, with the exception of UPS Worldwide (the "DeVaco Action"). In that action, the DeVacos brought several claims against the UPS Plaintiffs to recover for damages allegedly suffered by Gary DeVaco, a mechanic for ATI. ATI and UPS had contracted for ATI to transport some of UPS's overflow of packaging and cargo, and DeVaco was allegedly injured when the

ATI truck in which he and another ATI employee were waiting was flipped onto its side and pushed several feet by the jet blast from a taxiing UPS Boeing 747.

In August 2012, UPS filed this action in Jefferson County, Kentucky, Circuit Court seeking to require ATI to defend and indemnify UPS in the DeVaco action pursuant to the indemnification provision contained in the Cargo Aircraft Charter Agreement ("CACA") signed by UPS Worldwide and ATI. Pursuant to the CACA, ATI would serve as an independent contractor and provide "properly crewed, maintained, insured and equipped aircraft . . . for the carriage of UPS's freight[.]" (Am. Compl., DN 32-1, p. 2). Section 1.4 of the CACA contains the mutual indemnification provisions that are at issue in this action.[1]

According to UPS's amended complaint in this action, the UPS Plaintiffs tendered letters on July 19, 2010, September 16, 2010, and October 8, 2010, in which they demanded that ATI defend and indemnify UPS from DeVaco's claims pursuant to the indemnification provision contained in Section 1.4. Upon receipt of these letters, ATI contacted its lead insurer, Chartis

---

[1] Pursuant to Section 1.4 of the CACA:

> [ATI] hereby agrees to indemnify, defend, and release and hold harmless UPS and its officers, directors, agents and employees against any and all liabilities, claims, demands, suits, judgments, damages and losses, including the reasonable costs, expenses and legal fees in connection therewith or incident thereto, arising out of death or injury to any person whomsoever, including but not limited to employees of [ATI] or UPS, or arising out of loss of, damage to or destruction of any property whatsoever, including but not limited to cargo, the Aircraft and other property of UPS or third parties, to the extent caused by or arising out of or in any way connected with [ATI's] performance of service hereunder or its possession, use or maintenance of Aircraft utilized to provide such services, excluding however injury or damage caused by the willful misconduct or gross negligence of UPS or its subcontractors.
>
> UPS hereby agrees to indemnify, defend, and release and hold harmless [ATI] and its officers, directors, agents and employees against any and all liabilities, claims, demands, suits, judgments, damages and losses, including the reasonable costs, expenses and legal fees in connection therewith or incident thereto, arising out of death or injury to any person whomsoever, including but not limited to employees of [ATI] or UPS, or arising out of loss of, damage to or destruction of any property whatsoever, including but not limited to cargo, the Aircraft and other property of [ATI] or third parties, to the extent caused by or arising out of or in any way connected with the UPS' performance of services hereunder or its possession, use or maintenance of Aircraft utilized to provide such services, excluding however injury or damage caused by the willful misconduct or gross negligence of [ATI] or its subcontractors.

(Am. Compl., DN 32-1, p. 2).

Aerospace Insurance Group ("Chartis"), who then hired the law firm of Salmon Recchezza Singer & Turchi LLP (hereinafter, the "Salmon Firm") to investigate the UPS Plaintiffs' tender letters. The UPS Plaintiffs contend that the Salmon Firm initially recommended that ATI decline the UPS Plaintiffs' tender, but then later advised ATI to accept the tender.

According to the UPS Plaintiffs, ATI accepted the tender by an April 25, 2011 email. The email was sent by the Salmon Firm and states that "ATI will undertake the defense of UPS going forward in this litigation." (Am. Compl., DN 32-19, p. 2). The email was silent as to ATI's alleged duty to indemnify the UPS Plaintiffs. The Salmon Firm entered its appearance in the DeVaco Action on behalf of the UPS Plaintiffs on May 13, 2011.

More than a year later, in a letter dated July 17, 2012, Chartis informed the UPS Plaintiffs that ATI was not obligated to indemnify UPS in the DeVaco Action. The letter further stated that the UPS Plaintiffs were obligated to indemnify ATI pursuant to the CACA. ATI sent a similar letter to the UPS Plaintiffs on August 6, 2012 in which it declared that it was not obligated to indemnify the UPS Plaintiffs and "withdr[ew] its prior acceptance of UPS's tender of UPS's defense in [the DeVaco Action]." (Am. Compl., DN 32-28, p. 2). Further, the Salmon Firm informed the UPS Plaintiffs on August 10, 2012 that it would move to withdraw as counsel for UPS in the DeVaco Action. The UPS Plaintiffs contend that this withdrawal greatly prejudiced them in the DeVaco Action because it occurred after the close of discovery and within a few months of the trial date. In this action, the UPS Plaintiffs seek a declaration that ATI unconditionally accepted the UPS Plaintiffs' tender of indemnity and defense in the DeVaco Action, and that ATI has waived its rights and/or is estopped from disclaiming that obligation. The UPS Plaintiffs also brought a claim against ATI for breach of the CACA.

After the UPS Plaintiffs filed suit against ATI in Jefferson County, Kentucky, Circuit Court, ATI removed the case to this court pursuant to our diversity jurisdiction. ATI also filed an answer and counterclaim against the UPS Plaintiffs. (DNs 1, 3). The UPS Plaintiffs moved to dismiss the counterclaim (DN 11), prompting ATI to file an amended counterclaim in which it sought a declaratory judgment and brought claims against the UPS Plaintiffs for breach of contract and unjust enrichment. (DN 18). The UPS Plaintiffs then moved to dismiss the amended counterclaim (DN 21). This court dismissed the portion of the counterclaim seeking a declaration that the UPS Plaintiffs were obligated to indemnify ATI. (DN 25). We also dismissed ATI's claim for breach of the CACA, but declined to dismiss ATI's claim for unjust enrichment and its request for a declaration that ATI has no duty to defend and indemnify the UPS Plaintiffs in the DeVaco Action. (*Id.*).

The UPS Plaintiffs then filed an amended complaint. (DN 32). ATI answered the amended complaint and asserted several counterclaims against the UPS Plaintiffs. (DN 37). The UPS Plaintiffs moved to strike certain responses contained in ATI's answer (DN 41), but withdrew the motion upon ATI's filing of an amended answer (DN 45). Before the court is the UPS Plaintiffs' motion for judgment on the pleadings. (DN 47).

**II.**

The standard to be applied for a Rule 12(c) motion for judgment based on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss based on the complaint. *Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235, 240 (6th Cir. 2011). Accordingly, in deciding a Rule 12(c) motion, the court must take all of the "well-pleaded material allegations of the pleadings of the opposing party" as true, *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006), and may also take into account "matters of public record, orders, items

appearing in the record of the case, and exhibits attached to the [pleadings.]" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). However, the court "need not accept the [non-moving party's] legal conclusions or unwarranted factual inferences as true." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citation omitted). Ultimately, the motion should be granted only where the record clearly demonstrates that "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Rawe*, 462 F.3d at 526 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

Courts must treat motions under Rule 12(c) that rely on evidence outside of the pleadings as motions for summary judgment. Fed. R. Civ. P. 12(d). However, there is an exception for documents that a "defendant attaches to a motion to dismiss [which] are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

**III.**

As an initial matter, ATI argues that the court should ignore the exhibits attached to the UPS Plaintiffs' amended complaint. The UPS Plaintiffs attached 32 exhibits to their amended complaint, including the following types of documents: the CACA signed by UPS and ATI; dockets from the DeVaco Action and the amended complaint filed in that action; letters between the parties, including the UPS Plaintiffs' tender letters and correspondence regarding the withdrawal of tender; emails between the parties, including emails between ATI, Chartis, and the Salmon Firm regarding the DeVaco Action; internal memoranda and invoices from the Salmon Firm; and the settlement agreement reached in the DeVaco Action. The amended complaint

specifically references each of the attached exhibits in its recitation of the facts. (*See* Am. Compl., DN 32). In their reply brief, the UPS Plaintiffs also reattach the tender letters from July 19, 2010 and September 16, 2010, in addition to the amended complaint in the DeVaco action. (DN 56).

Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The UPS Plaintiffs' Amended Complaint references documents that were specifically attached thereto. Therefore, these documents are part of the pleadings under Rule 10(c). Accordingly, the UPS Plaintiffs' motion for judgment on the pleadings will be addressed as such, and not treated as a motion for summary judgment pursuant to Rule 12(d).

The UPS Plaintiffs argue that they are entitled to judgment on the pleadings because the pleadings show that ATI is estopped from disclaiming its duty to defend and indemnify UPS in the DeVaco Action. The UPS Plaintiffs contend that ATI unconditionally accepted their tender of defense and indemnity without reserving its right to later withdraw its acceptance. They argue that ATI should be estopped from withdrawing its acceptance of the tender because such withdrawal greatly prejudices them in the DeVaco Action.

Kentucky courts have primarily recognized this estoppel principle in situations where an insurance company agrees to provide a defense to its insured, but later withdraws its defense to the insured's detriment. *See Universal Underwriters Ins. Co. v. Travelers Ins. Co.*, 451 S.W.2d 616 (Ky. 1970); *Am. Cas. Co. of Reading, Pa. v. Shely*, 234 S.W.2d 303 (Ky. 1950); *Travelers Indem. Co. v. Nieman*, 563 S.W.2d 724 (Ky. Ct. App. 1977). The UPS Plaintiffs seek to apply this principle to indemnity contracts entered into by commercial parties. They argue that "[c]aselaw from across the country makes plain that the duties owed by a contractual indemnitor

mirror those owed by an insurance company." (DN 47, p. 15). Accordingly, they contend that the principles of estoppel and waiver that have developed in insurance case law are equally applicable to indemnity contracts.

However, the UPS Plaintiffs have not shown that Kentucky courts would subject an indemnitor's duty to defend and indemnify under an indemnity contract to the same standard as an insurer's duty to defend and indemnify pursuant to the terms of an insurance contract. The UPS Plaintiffs purport that case law from the Sixth Circuit and Kentucky "uniformly holds" that when an indemnitor provides a defense and later withdraws said defense without reserving its rights under a contract, it may be estopped from withdrawing the defense. But the UPS Plaintiffs fail to cite to a case applying Kentucky law on that specific point. Further, the cases they do cite primarily address this principle in the context of insurance contracts, in which an insurer agreed to provide a defense to an insured. However, in Kentucky the duty to defend is broader than the duty to indemnify, *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279–80 (Ky. 1991), and the parties have not shown that this allocation would be similar in indemnity contracts.

The UPS Plaintiffs acknowledge in their reply brief that their proffered cases primarily involve the interpretation and application of Ohio law. Nevertheless, they argue that Ohio indemnity law is not sufficiently distinguishable from Kentucky indemnity law so as to set these cases apart. However, the UPS Plaintiffs do not support this bald contention with any authority. Accordingly, the court is not convinced that Kentucky would apply the principles of waiver and estoppel with equal force to indemnity agreements between commercial parties like UPS and ATI. The UPS Plaintiffs might have put forth a conceivable argument, but it is insufficiently supported on this critical point.

Further, the court is not convinced that no issues of material fact remain. As stated above, a court will grant a Rule 12(c) motion for judgment on the pleadings "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Rawe*, 462 F.3d at 526. In ruling on a motion for judgment on the pleadings, the court is obligated to accept ATI's factual allegations as true. *Id*. ATI has alleged that it never agreed to accept the UPS Plaintiffs' tender of indemnity, nor did it intend for the April 25, 2011 email to serve as an acceptance of a tender of indemnity. The email itself makes no mention of the UPS Plaintiffs' request for indemnification from ATI. Rather, it states only that "ATI will undertake the defense of UPS going forward in this litigation." (Am. Compl., DN 32-19). Therefore, the court is unable to conclude, based on the pleadings, whether this email was sufficient to invoke ATI's duty to indemnify the UPS Plaintiffs in the DeVaco Action.[2]

## IV.

For the reasons set forth herein this date and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** that the UPS Plaintiffs' motion for judgment on the pleadings (DN 47) is **DENIED**. A separate order will be entered this date in accordance with this Memorandum Opinion.


**IT IS SO ORDERED.**

February 10, 2014

Charles R. Simpson III, Senior Judge
United States District Court

---

[2] ATI also lists additional facts which it contends are disputed and material to the resolution of this matter, including whether DeVaco's injuries arose from the UPS Plaintiffs' gross negligence or willful misconduct. (DN 52, p. 3–5).